**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | No. 12 B 08965 |
| | ) | |
| ERIC M. SCHUDY, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| ANN ARBOR REHAB CENTERS, INC., | ) | Adversary No. 12 A 01177 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ERIC M. SCHUDY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

This adversary proceeding seeks a judgment that a debt of Eric Schudy should be excepted from his bankruptcy discharge under 11 U.S.C. § 523(a)(2)(A).   The proceeding is before the court on the summary judgment motion of the plaintiff, Ann Arbor Rehab Centers, Inc. ("AARC").   The basis for the summary judgment motion is collateral estoppel.   AARC filed a complaint in state court against Schudy and obtained a judgment against him.   Collateral estoppel, AARC argues, results in the state court judgment resolving all of the facts at issue in the present dischargeability proceeding in favor of AARC.

AARC is correct.   As discussed below, (1) collateral estoppel bars Schudy from making any defense to AARC's allegations in the pending dischargeability proceeding if the same issues

were actually litigated by the parties and finally and necessarily determined by the state court,

and (2) the state court's judgment satisfies these requirements.   Schudy is therefore estopped

from relitigating the issues of fraud that were determined in state court, and a judgment of

nondischargeability is required.

## Jurisdiction

Under 28 U.S.C. § 1334(a), the federal district courts have "original and exclusive

jurisdiction" of all cases under title 11 of the United States Code (the "Bankruptcy Code"), but

28 U.S.C. § 157(a) allows the district courts to refer these cases to the bankruptcy judges for

their districts.   The District Court for the Northern District of Illinois has made such a reference

of all of its bankruptcy cases.   N.D. Ill. Internal Operating Procedure 15(a).

Under 28 U.S.C. § 157(b)(1), a bankruptcy judge to whom a case has been referred may

enter final judgment on any "core proceedings" arising under the Bankruptcy Code.   The

determination of the dischargeability of a particular debt—the subject of this adversary

proceeding—arises under the Bankruptcy Code and is a core proceeding under 28 U.S.C.

§ 157(b)(2)(I).   Accordingly, final judgment is within the scope of the bankruptcy court's

authority.

## Factual Background

For purposes of the pending summary judgment motion, no relevant facts are in dispute.

AARC, a Michigan corporation, is a business that provides therapy, supported living programs

and other services to patients with traumatic brain injuries.   Schudy was the sole shareholder

and CEO of Asmakta, Ltd., an Illinois corporation, in a software consulting business.   In 2008

and 2009, AARC contracted to purchase software and technical services to be supplied by

1

Asmakta and Schudy, with the intent of increasing the efficiency of its scheduling, record keeping, and billing coordination.    AARC was not satisfied with the product or service that Asmakta provided, and AARC attempted to revoke the contract and obtain return of the money paid to Asmakta.    Its efforts were not successful.

In 2010, AARC filed a complaint in the Circuit Court for the County of Washtenaw, Michigan against both Asmakta and Schudy.    The complaint set out six counts, for breach of contract, breach of warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, quantum meruit/unjust enrichment, and fraud in the inducement.    The last count was directed against Schudy personally.    On February 14, 2012, following a bench trial and submission of written closing arguments by both sides, the Circuit Court Judge entered an Opinion After Bench Trial (Adv. Dkt. 13), concluding that Asmakta breached the parties' contract, that actual and consequential damages were in the amount of "no less than" $150,000, and that Schudy had individually, "fraudulently induced . . . AARC to enter into the contract with Asmakta, an individual tort for which Mr. Schudy is personally liable for all damages suffered by AARC."    (Adv. Dkt. 13, pp. 7-8.)    The court did not, however, enter judgment at the time it issued its opinion.

On March 7, 2012, shortly after the state court opinion was entered, Schudy filed a petition for relief under Chapter 7 of the Bankruptcy Code.    (Case Dkt. 1.)    On June 19, this court granted relief from the automatic stay to allow the state court to enter a final judgment order.    On July 28, 2012, AARC filed the present dischargeability proceeding, with a complaint alleging that Schudy falsely represented to AARC that he had "personally designed" the software he was selling and that, in relation to the sales and support of the software, he had resources at

2

Harvard and in California and Japan.    The complaint further alleges that Schudy, at the time he

made these representations, knew or should have known that they were false, that he intended

AARC to rely on them, and that AARC justifiably relied on them to its detriment by entering

into the contract and making payment to Asmakta.

On August 2, 2012, the Circuit Court entered judgment in the state court action, including

the following provision regarding the count against Schudy:

> By fraudulent inducement, Eric M. Schudy fraudulently induced Ann Arbor
> Rehab Centers, Inc., to enter into the underlying contract, an individual tort for
> which Eric M. Schudy is personally liable for all damages suffered by the
> plaintiff, which tort included false representations of fact (to wit: that Mr. Schudy
> had "personally designed" the software he was selling; and, that Mr. Schudy had
> resources at "Harvard" and in "California" and "Japan"); that Mr. Schudy knew
> these representations to be false at the time made; that Mr. Schudy made these
> false statements with the intent to deceive; and, the plaintiff, Ann Arbor Rehab
> Centers, Inc. . . . justifiably relied on these false statements.

 (Adv. Dkt. 14, p. 2, ¶ 1.)    The judgment awarded damages against Schudy individually "in the

amount of $188,676.95, inclusive of judgment interest through June 30, 2012, plus judgment

interest from and after June 30, 2012."    (Adv. Dkt. 14, p. 2, ¶ 3.)

Schudy timely appealed the state court judgment to the Michigan Court of Appeals on

August 23, 2012.    As of the date of this opinion, to this court's knowledge, the appeal is still

pending.

On August 27, 2012, Schudy filed his answer to the adversary complaint, denying the

allegations of fraud.    (Adv. Dkt. 6.)    Thereafter, on November 5, 2012, the AARC filed the

pending motion for summary judgment, based on the state court judgment.    (Adv. Dkt. 10.)

The parties submitted briefs on the question of collateral estoppel.    (Adv. Dkt. 10, 17, 18, 23.)

3

AARC now asserts that all of the elements of § 523(a)(2)(A) of the Bankruptcy Code have been determined in the state court action and that the state court judgment collaterally estops Schudy from relitigating those elements in this proceeding.   Schudy has responded that the state court judgment is insufficient to establish collateral estoppel because, he assets, the state court made no findings that any misrepresentations (1) were material, (2) were made with the intent that AARC rely on them to its detriment, or (3) were the actual cause of the damages sustained by AARC.

## Summary Judgment Standard

Summary judgment may be granted if there is no genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56, made applicable in bankruptcy proceedings through Fed. R. Bankr. P. 7056.   The primary purpose of the summary judgment procedure is to avoid unnecessary trials where no genuine issues of material fact are in dispute.   *See Trautvetter v. Quick*, 916 F.2d 1140, 1147 (7th Cir. 1990); *Farries v. Stanadyne/Chi. Div.*, 832 F.2d 374, 378 (7th Cir. 1987) (quoting *Wainwright Bank & Trust Co. v. Railroadmens Fed. Sav. & Loan Ass'n of Indianapolis*, 806 F.2d 146, 149 (7th Cir. 1986)).   Where the material facts are not in dispute, the sole issue is whether the moving party is entitled to judgment as a matter of law.   *ANR Advance Transp. Co. v. Int'l Bhd. Of Teamsters, Local 710*, 153 F.3d 774, 777 (7th Cir. 1998).

## Discussion

A.   *Collateral Estoppel*

Under 28 U.S.C. § 1738, the state court judgment in favor of AARC on its claim for fraudulent inducement must be given the same preclusive effect in federal courts as it would be

4

given in the courts of Michigan.   *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66

L.Ed.2d 308 (1980) ("Congress has specifically required all federal courts to give preclusive

effect to state-court judgments whenever the courts of the State from which the judgments

emerged would do so.").   Collateral estoppel principles apply to dischargeability proceedings.

*Grogan v. Garner*, 498 U.S. 279, 285 n. 11 (1991).   Accordingly, Michigan law determines the

extent to which the state court judgment in this case should be given preclusive effect.

     Under Michigan law, "[c]ollateral estoppel precludes relitigation of an issue in a

subsequent, different cause of action between the same parties where the prior proceeding

culminated in a valid, final judgment and the issue was (1) actually litigated, and (2) necessarily

determined."   *People v. Gates,* 434 Mich. 146, 452 N.W.2d 627, 630 (1990).   Michigan courts

have instructed that an issue "must be identical to that determined in the prior action" to have been

actually litigated.   *Amalgamated Transit Union, Local 1564, AFL-CIO v. S.E. Mich. Transp.

Auth.,* 437 Mich. 441, 473 N.W.2d 249, 254-55 (1991).   Also, an issue is "actually litigated" if it

is "put into issue by the pleadings, submitted to the trier of fact for determination, and is thereafter

determined."   *Latimer v. Wm. Mueller & Son, Inc.*, 149 Mich. App. 620, 386 N.W.2d 618, 627

(1986).

     Accordingly, in applying collateral estoppel to a pending proceeding, a court must consider

both the "factual focus" of the prior proceeding and "whether the party against whom collateral

estoppel is asserted has had a full and fair opportunity to litigate the issue."   *Gates,* 452 N.W.2d at

631 (citing *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.,* 402 U.S. 313, 329, 91 S.Ct. 1434, 28

L.Ed.2d 788 (1971)).   For an issue to have been "necessarily determined," it must have been

"essential to the judgment."   *Id.* (citing Restatement (Second) of Judgments § 27 (1982)).

"Collateral estoppel applies only where the basis of the prior judgment can be ascertained clearly, definitely, and unequivocally." *Id.*

The initial framework for applying collateral plainly applies here. The present dischargeability proceeding is distinct from the state court action, but it is between identical parties. Moreover, although the state court decision is currently on appeal, the factual findings of that court have collateral estoppel effect, subject to the possible reversal of the decision. *See Jamil v. Thomas (In re Jamil)*, 409 B.R. 866, 871 (Bankr. E.D. Mich. 2009). Therefore, the state court judgment is a valid final judgment between the parties, and the only questions about collateral estoppel to be determined here are whether the facts found by the state court cover all of the elements of nondischargeability under federal bankruptcy law and whether those findings were necessary to the state judgment.

B. *Identity of issues*

Fraud in the present proceeding is defined by federal statute, while fraud in the state court action was defined by the state's common law. The "actually litigated" prong of the collateral estoppel analysis asks whether the state law counts adjudicated in the state trial court required findings that satisfy the elements of an action under Section 523(a)(2)(A) of the Bankruptcy Code. *In re Livingston*, 372 Fed.Appx. 613, 618 (6th Cir. 2010).

Under § 523(a)(2)(A), a Chapter 7 discharge does not discharge an individual debtor from any debt:

> (2)   for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by —

> (A)   false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."    11 U.S.C. § 523(a)(2)(A).

6

The Seventh Circuit Court of Appeals has articulated the following requirements in order for a creditor to preclude dischargeability under this section: (1) the debtor made a false representation or omission of fact, (2) which the debtor (a) either knew was false or made with reckless disregard for the truth and (b) made with the intent to deceive, (3) upon which the creditor justifiably relied. *Ojeda v. Goldberg*, 599 F.3d 712, 716-17 (7th Cir. 2010). Under section 523(a)(2)(A), a false representation is an express misrepresentation that can be demonstrated either by a spoken or written statement or through conduct. *New Austin Roosevelt Currency Exch., Inc. v. Sanchez (In re Sanchez)*, 277 B.R. 904, 908 (Bankr. N.D. Ill. 2002); *Rae v. Scarpello (In re Scarpello)*, 272 B.R. 691, 700 (Bankr. N.D. Ill. 2002).

Under the common law of Michigan, fraud in the inducement occurs "where a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon." *Samuel D. Begola Services, Inc. v. Wild Bros.*, 210 Mich.App. 636, 639 (1993). This standard was quoted and applied by the state court in rendering its decision. (Adv. Dkt. 13, p. 2.)

Although the state court opinion focuses primarily on the breach of contract claim, the court expressly concluded that Schudy fraudulently induced AARC to enter the contract with Asmakta. In its judgment, the state court provided more detailed findings that Schudy falsely stated that he had "personally designed" the software he was selling and that he had resources at Harvard, California, and Japan. It also specifically found that Schudy knew these representations to be false at the time he made them; that he made such false statements with the intent to deceive AARC; and that AARC justifiably relied on the false statements.

7

Schudy argues that the state court made no findings that any misrepresentations were material.    However, at the outset of its opinion, the state court quoted the *Begola* case as the standard used to determine fraudulent inducement, specifically including the requirement that the misrepresentation complained of be material.    The court proceeded to find that Schudy made two knowingly false representations, intending AARC to rely on them, and that AARC in fact relied on them in entering into the contract with Asmakta.    In context, by finding that these misrepresentations supported a judgment of fraudulent inducement, the court necessarily found that they were material.    *See Tamari v. Bache & Co.,* 637 F.Supp. 1333, 1336–37 (N.D. Ill. 1986) ("When the issue for which preclusion is sought is the only rational one the factfinder could have found, then that issue is considered 'determined' by the factfinder, even if no explicit finding of that issue has been made.").

Schudy also argues that the state court did not find that any misrepresentations were the actual cause of the damages sustained by AARC.    However, the state court found Asmakta liable for breach of contract, and it entered judgment against Schudy individually in the total amount of the contractual damages.    Necessarily, the court found that Schudy's misrepresentations, by causing AARC to enter into the contract, were a cause of the contractual damages.

Finally, the state court judgment held that AARC "justifiably relied" on Schudy's false statements.    Under § 523(a)(2)(A) of the Bankruptcy Code, justifiable reliance is sufficient to except a debt from dischargeability.    Justifiable reliance is a less demanding standard than reasonable reliance; it requires only that the creditor did not "blindly [rely] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to

8

make a cursory examination or investigation." *Ojeda*, 599 F.3d at 717, quoting *Field v. Mans,* 516 U.S. 59, 71, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) (internal quotation marks omitted). Therefore, the justifiable reliance finding by the state court meets the requirement under § 523(a)(2)(A). It should be noted that the *Begola* case cited by the state court set forth a "reasonable" reliance standard for a finding of fraud, and so the sufficiency of the state court finding might be questioned under state law, but it is plainly sufficient to establish nondischargeability under § 523(a)(2)(A).

Accordingly, each finding necessary for a determination of fraud under § 523(a)(2)(A) was being fully and actually litigated in the state court.

C. *Necessity of the prior findings.*

The remaining issue is whether each of these findings was necessary to the state court's judgment. They were. Each of the factual matters set out above was essential to the state court's judgment of fraudulent inducement. The state court based its damage award of $188,676.95 against Schudy explicitly upon its finding of fraudulent inducement. Because the damages awarded were unavailable absent the findings of fraud against Schudy individually, the state court's determination that Schudy defrauded AARC was necessary to its judgment.

## Conclusion

For the reasons set out above, the state court judgment collaterally estops Schudy from contesting any of the factual issues establishing nondischargeability of his debt to AARC under § 523(a)(2)(A). Because this decision is predicated on the state court's opinion and judgment, which is subject to reversal upon appeal to the Michigan appellate court, the judgment entered here

will be subject to reconsideration under Fed. R. Bankr. P. 9024 if the state court judgment is reversed.

A separate order granting plaintiff's motion for summary judgment will be entered consistent with this opinion.   The trial dates set in this matter have been stricken.

Dated:   December 27, 2012

Eugene R. Wedoff
United States Bankruptcy Judge